1   **WO**

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                        FOR THE DISTRICT OF ARIZONA

10

11   ARIZONA LIBERTARIAN PARTY, et )
     al.,                          )
12                                 )
              Plaintiffs,          )        No. CIV 11-856-TUC-CKJ
13                                 )
     vs.                           )            **ORDER**
14                                 )
     KEN BENNETT, Secretary of State, )
15                                 )
              Defendant.           )
16   _____)

17          Pending before the Court are the Motion for Summary Judgment (Doc. 15) by

18   Secretary of State Ken Bennet ("the Secretary" or "Defendant") and the Motion for Summary

19   Judgment (Doc. 17) filed by Plaintiffs Arizona Libertarian Party Incorporated, Arizona Green

20   Party, James March, Kent Solbert, Steve Lackey ("Plaintiffs").  Responses and replies have

21   been filed.  The parties presented oral argument to the Court on December 3, 2012.

22

23   *Factual Background*

24          In 2011, the Arizona Legislature amended the statute regarding the form used for the

25   registration of electors.  At the time of the amendment, the statute stated the form "shall

26   contain . . . [t]he registrant's party preference." A.R.S. § 16-152(A)(5) (2004). The amended

27   statute now provides that the form shall contain:

28

> 5. The registrant's party preference. The two largest political parties that are entitled to continued representation on the ballot shall be listed on the form in the order determined by calculating which party has the highest number of registered voters at the close of registration for the most recent general election for governor, then the second highest. The form shall allow the registrant to circle, check or otherwise mark the party preference and shall include a blank line for other party preference options.

A.R.S. § 16-152(A)(5). The form currently available from the county recorders and the Secretary of State's Office includes check boxes to indicate a registrant's party preference as "Republican," "Democratic," or "Other," with a blank line on which the person can fill in their choice. Defendant's Statement of Facts, ("DSOF"), ¶ 1. Plaintiffs' Motion for Summary Judgment states that the blank line on which a person can fill in the "Other" choice is .9" long.[1] Plaintiffs' Motion for Summary Judgment, p. 3. The form utilized by the Motor Vehicle Division includes a blank box where a registrant can fill in any party to indicate their party preference. DSOF, ¶ 2.

On December 29, 2011, Plaintiffs, members of the Arizona Libertarian Party and the Arizona Green Party, filed a Complaint against the Secretary alleging that the issuance of voter registration forms listing only two of Arizona's four political parties with statewide continuing ballot access abridges the other two parties' First and Fourteenth Amendment rights to advocate and associate in a political context in violation of 42 U.S.C. § 1983 and deprives the other two parties of equal protection of the laws, guaranteed by the Fourteenth Amendment.

The parties have submitted Motions for Summary Judgment (Docs. 15 and 17). Responses and replies have been filed.

In his Motion for Summary, the Secretary has provided the numbers of recent party registrants:

---

[1]This statement was made in the Motion for Summary Judgment rather than in Plaintiffs' Statement of Facts. Defendant's response indicates that he does not object to Plaintiffs' Statement of Facts, but does assert that the form provided by Plaintiffs is not the only voter registration form that is used.

| PARTY | DATE | REGISTRANTS |
|---|---|---|
| Libertarian | January 1, 2011 | 24,880 |
| | April 1, 2011 | 24,951 |
| | July 1, 2011 | 24,854 |
| | October 1, 2011 | 23,913 |
| | January 1, 2012 | 22,912 |
| | March 1, 2012 | 22,530 |
| Green | January 1, 2011 | 5,040 |
| | April 1, 2011 | 5,105 |
| | July 1, 2011 | 5,174 |
| | October 1, 2011 | 5,061 |
| | January 1, 2012 | 4,996 |
| | March 1, 2012 | 4,929 |
| Democratic | January 1, 2011 | 1,008,689 |
| | April 1, 2011 | 1,007,124 |
| | July 1, 2011 | 999,232 |
| | October 1, 2011 | 974,892 |
| | January 1, 2012 | 957,786 |
| | March 1, 2012 | 952,907 |
| Republican | January 1, 2011 | 1,142,605 |
| | April 1, 2011 | 1,142,045 |
| | July 1, 2011 | 1,138,802 |
| | October 1, 2011 | 1,124,173 |
| | January 1, 2012 | 1,118,938 |
| | March 1, 2012 | 1,134,094 |

| Other | January 1, 2011 | 1,010,725 |
|---|---|---|
| | April 1, 2011 | 1,030,500 |
| | July 1, 2011 | 1,043,649 |
| | October 1, 2011 | 1,037,450 |
| | January 1, 2012 | 1,033,584 |
| | March 1, 2012 | 1,037,007 |
| Total Registered Voters | January 1, 2011 | 3,191,939 |
| | April 1, 2011 | 3,209,725 |
| | July 1, 2011 | 3,211,711 |
| | October 1, 2011 | 3,165,558 |
| | January 1, 2012 | 3,138,327 |
| | March 1, 2012 | 3,151,615 |

DSOF, pp. 4-5. Plaintiffs' response points out that these records show that, over the 15 month period tracked, Democratic registrations declined 5%, Republican registrations fell by under 1%, but Libertarian registrations fell by nearly 10%. Additionally, the Green Party's registration declined by approximately 2%.

*Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met the initial burden, the opposing party must "go beyond

the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510, internal quotes omitted.  The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23.  In opposing summary judgment, a plaintiff is not entitled to rely on the allegations of his complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits.  *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992).  Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The parties do not appear to present any factual disputes, but argue the legal significance of those facts.

*Standing Doctrine*

The parties dispute whether Plaintiffs have standing to bring their claims.  The issue of standing is a threshold determination of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).  Indeed, Article III of the U.S. Constitution limits "the federal judicial power 'to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process.'"  *Valley Forge Christian Coll. v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), *quoting Flast v. Cohen*, 392 U.S. 83, 97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)).

"Standing doctrine involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"  *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1103 (9th Cir.2006) *quoting Kowalski v. Tesmer*, 543 U.S. 125, 128–29, 125

S.Ct. 564, 160 L.Ed.2d 519 (2004).  The Supreme Court has set forth that "[t]he 'irreducible constitutional minimum of standing' contains three requirements." *Steel Co. v. Citizens For A Better Env't.*, 523 U.S. 83, 102-03, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  The party seeking standing must show that it has "(1) suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir.2008); *Valley Forge*, 454 U.S. at 472.

Prudential limitations, however, "restrict the grounds a plaintiff may put forward in seeking to vindicate his personal stake." *Fleck*, 471 F.3d at 1104, *citing Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Indeed, "a litigant must normally assert his own legal interests rather than those of third parties." *Id*., *quoting Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).  "Within the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing," *Munson*, 467 U.S. 953, 956, 104 S. Ct. 2349, 90 L.Ed.2d 943 (1986) but "[i]t is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute, *Renne v. Geary*, 501 U.S. 312, 317, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991).

The Secretary argues that Plaintiffs have failed to carry their burden of demonstrating a real or immediate threat of injury.  The Secretary asserts that Plaintiffs are speculating in asserting that possible Libertarian or Green registrants may assume that those parties must not be real political parties or do not have ballot access, and there would, therefore, be no purpose in registering in them.  The Secretary asserts that there have been fluctuations in all party membership numbers over the past fourteen months (January 2011 to March 2012), but there is no evidence of a causal connection between the new registration forms and the minimal fluctuations in the Libertarian and Green Party numbers.  Rather, the Secretary points out there are many possible reasons for the fluctuation, including people moving in

and out of the state, changing party affiliation, dying, imprisonment, and allowing registrations to go inactive.

Plaintiffs argue that they have been harmed in fact because they are unfairly put to the extra effort of writing their parties' names on the registration form and that, because such a tiny space is afforded for filling in an "Other" party, a clerk may mistake what has been written down. Further, Plaintiffs argue that keeping continued ballot access is vital to the parties' survival and a sufficient number of voter registrations is one way of keeping such access. A.R.S. §16-804(A). Although Plaintiffs acknowledge that registration fluctuations are natural, they point out that the Libertarian decrease is greater than the Democrat or Republican decrease.

A review of the registrations indicates that non-Libertarian or Green registrations (i.e., the "Others") increased by about 2.6%, indicating that the "Other" blank line permits "Other" parties to increase registrations. However, Plaintiffs are placed in a position that extra effort is required to register in an "Other" party and such registrations run the risk of being misread. Plaintiffs have shown that they have suffered an actual concrete injury in fact. Further, although other factors may be at play, the injury is fairly traceable to the modified registration form. Lastly, the injury is likely to be redressed by a favorable court decision. Plaintiffs have standing to bring their claims.

*Ripeness Doctrine*

The parties dispute whether Plaintiffs' claims are ripe for review. The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The doctrine is aimed at cases that do not yet have a concrete impact on the parties. *See Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87

1  L.Ed.2d 409 (1985).

2    The Supreme Court has stated that to meet the ripeness standard, plaintiffs must show

3  either a specific present objective harm or the threat of specific future harm. *Laird v. Tatum*,

4  408 U.S. 1, 14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).  "A claim is not ripe for adjudication

5  if it rests upon contingent future events that may not occur as anticipated, or indeed may not

6  occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406

7  (1998), *internal citations omitted*.  The Ninth Circuit has stated that, "[b]ecause ripeness is

8  peculiarly a question of timing, we look at the facts as they exist today in evaluating whether

9  the controversy before us is sufficiently concrete to warrant our intervention." *Assiniboine*

10  *and Sioux Tribes v. Bd. of Oil and Gas*, 792 F.2d 782, 788 (9th Cir.1986), *quotations*

11  *omitted*; *see also Alcoa, Inc. v. Bonneville Power Administration*, 698 F.3d 774, 793 (9th Cir.

12  2012).  The burden of establishing ripeness rests on the party asserting the claim. *Colwell*

13  *v. Department of Health and Human Services*, 558 F.3d 1112 (9th Cir. 2009).

14    The ripeness doctrine requires the Court "to first consider the fitness of the issues for

15  judicial review, followed by the hardship to the parties of withholding court consideration."

16  *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir.

17  2012).  The Ninth Circuit has recognized:

18    Courts have regularly declined on prudential grounds to review challenges to recently
      promulgated laws or regulations in favor of awaiting an actual application of the new
19    rule. *See, e.g., Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520,
      18 L.Ed.2d 697 (1967) ("We believe that judicial appraisal of these factors is likely
20    to stand on a much surer footing in the context of a specific application of this
      regulation than could be the case in the framework of the generalized challenge made
21    here."); *Nat'l Park Hospitality Ass'n*, 538 U.S. 803, 812, 123 S.Ct. 2026, 155 L.Ed.2d
      1017 (2003) ("[J]udicial resolution of the question presented here should await a
22    concrete dispute about a particular concession contract."); *Colwell*, 558 F.3d at 1128
      ("If and when the parties are able to provide examples of the manner in which the
23    HHS has used the Policy Guidance ... we will be in a better position to determine
      whether the 2003 Policy Guidance functions as a substantive rule or as a general
24    statement of policy.").

25  *Oklevueha Native Am. Church*, 676 F.3d 829, 837-38 (9th Cir. 2012).  "Hardship serves as
26
    a counterbalance to any interest the judiciary has in delaying consideration of a case." *Id.*
27
    at 838; *see also Colwell*, 558 F.3d at 1129 ("[T]his hardship is insufficient to overcome the
28

uncertainty of the legal issue presented in the case in its current posture."). Indeed, the Ninth Circuit has state that the "mere potential for future injury does not overcome the interest of the judiciary in delaying review." *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir.1992), *internal quotation marks omitted*.

In determining whether an issue is fit for judicial review, the central focus is on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532 at 112. Consideration of whether the issue is purely legal and whether the challenged government action is final is appropriate. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149-52, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Additionally, to prevent expressly proscriptive laws from "chilling" First Amendment rights, courts have adopted relaxed standards for standing and ripeness. *See, e.g., San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1129 (9th Cir.1996) (noting that the "chilling effect" on First Amendment speech is an adequate injury for standing purposes when the plaintiff presents an overbreadth facial challenge to a statute); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499-1500 (10th Cir. 1995) ("in the context of a First Amendment facial challenge, reasonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim"), *quotation omitted*.

In determining whether Plaintiffs' claims are ripe, therefore, the Court considers the fitness of the controversy for judicial review, whether withholding review will be a hardship to Plaintiffs and the chilling effect the challenged law may have on First Amendment liberties.

Plaintiffs' case involves an uncertain future in that registrations may not occur as speculated by Plaintiffs; however, it is certain that persons choosing to register for an "Other" party will have to make an extra effort to do so. Further, the issue is purely legal and the Secretary's action is final. Additionally, withholding review will be a hardship to Plaintiffs as extra effort will be required to register as an "Other" party. Because additional

1    efforts may be needed to maintain or increase the "Other" party registrations, a chilling effect

2    on Plaintiffs' First Amendment liberties may result.  Indeed, "while it is true that 'the mere

3    existence of a statute . . . is ordinarily not enough to sustain a judicial challenge, even by one

4    who reasonably believes that the law applies to him and will be enforced against him

5    according to its terms,'   *National Student Ass'n v. Hershey*, 412 F.2d 1103, 1110

6    (D.C.Cir.1969), in the context of a First Amendment facial challenge, '[r]easonable

7    predictability of enforcement or threats of enforcement, without more, have sometimes been

8    enough to ripen a claim,' [*Martin Tractor Co. v. Federal Election Comm'n*, 627 F.2d 375,

9    380 (D.C.Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980)].  *See also*

10   *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-99, 99 S.Ct. 2301, 2308-09,

11   60 L.Ed.2d 895 (1979)."  *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495,

12   1499-1500 (10th Cir. 1995).  The statute at issue having already resulted in the modification

13   of a registration form, there is more than reasonable predictability regarding the statute's

14   effect.  Plaintiffs' claims are ripe.

15

16   *Standard of Review*

17          The parties disagree what standard of review is to be used.  Plaintiffs assert that strict

18   scrutiny is applicable.  Plaintiffs point out that, in ballot cases, the Supreme Court has

19   considered whether states have shown any compelling interest which justifies imposing

20   heavy burdens on the right to vote and to associate.  *Williams v. Rhodes*, 393 U.S. 23 (1968)

21   (In determining whether unequal burdens placed on minority groups by the State, the Court

22   has consistently held that the State must have a compelling state interest to justify limiting

23   First Amendment freedoms.); *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S.

24   173, 184 (1979) ("When such vital individual rights are at stake, a State must establish that

25   its classification is necessary to serve a compelling interest."); *Anderson v. Celebrezze*, 460

26   U.S. 780, 793 n. 16, 103 S.Ct. 1564 (1983) ("[B]ecause the interests of minor parties and

27   independent candidates are not well represented in state legislatures, the risk that the First

28   Amendment rights of those groups will be ignored in legislative decisionmaking may warrant

more careful judicial scrutiny.").

The Secretary asserts, however, a "state statute or policy must cause more than a minimal infringement of First Amendment rights before a state is called upon to provide a 'compelling interest' justification." *Nader v. Schaffer*, 417 F.Supp. 837, 848-49 (D. Conn. 1976), aff'd 429 U.S. 989 (1976); *see also United States Civil Serv. Comm. v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 567 (1973) ("neither the right to associate nor the right to participate in political activities is absolute").  Indeed, the Secretary points out that the Supreme Court has  recognized that States may enact reasonably regulations of parties, elections, and ballots to reduce election- and campaign-related disorder. *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *see also Storer v. Brown*, 415 U.S. 724, 730 (1974) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.")

The Ninth Circuit has recognized that the Supreme Court "has typically applied [a] 'more flexible' standard to election laws because '[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections.'" *Caruso v. Yamhill County*, 422 F.3d 848, 855 (9th Cir. 2005), *quoting Burdick*, 504 U.S. at 433; *accord Clingman*, 544 U.S. 581, 593, 125 S.Ct. 2029, 2038, 161 L.Ed.2d 920 (2005) (explaining that subjecting every electoral regulation to strict scrutiny would "hamper the ability of States to run efficient and equitable elections").  Although the Ninth Circuit recognized that the Supreme Court has subjected several other election law case to strict scrutiny, those cases "involved regulations of – or, more precisely, limitations on – 'pure speech.'" *Caruso*, 422 F.3d at 855.  The Ninth Circuit recognized that cases involving regulations of the "voting process"  are "generally subject to a balancing standard, under which a reviewing court weighs the 'character and magnitude' of the burden imposed against the interests advanced to justify that burden. *Id.*

The Ninth Circuit stated:

Under [the balancing] standard, "the rigorousness of [a reviewing court's] inquiry into

the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059. "[W]hen those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)). But when those rights are subjected only to "'reasonable, nondiscriminatory'" restrictions, "'the State's important regulatory interests are generally sufficient.'" *Id.* (quoting *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564).

*Caruso*, 422 F.3d at 859; *see also Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) (Ninth Circuit applies a "flexible standard" when considering constitutional challenges to election regulations.); *Doe v. Reed*, 586 F.3d 671, 678 n. 11 (9th Cir. 2009). An application of the balancing standard is appropriate.

*Application of the Balancing Standard*

The parties do not appear to assert that a separate analysis is appropriate for each of the claims. Indeed, the Ninth Circuit has recognized that separate analyses may not be appropriate. *Dudum*, 640 F.3d at 1106 n. 15 ("The Supreme Court has addressed such claims collectively using a single analytic framework. *See Anderson*, 460 U.S. at 787 n. 7, 103 S.Ct. 1564 ("[W]e base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis. We rely, however, on the analysis in a number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment.").

Plaintiffs argue that the rights are patently discriminatory and anti-competitive because the two political parties that control the Arizona Legislature have provided themselves an advantage. However, the statute does not discriminate against any party – it provides that the two largest political parties that are entitled to continued representation on the ballot shall be listed on the form. The statute does not prevent any party, if it qualifies under the statute, to be listed on the form. Moreover, the challenged statute does not subject the rights to severe restrictions. Rather, the statute does not limit the access of, or inhibit the development of, other or new parties. *See Norman v. Reed*, 502 U.S. 279, 288-89, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992). Indeed, when faced with a challenge that a registration form

1    which included only organizations that qualified as a Party and an unaffiliated option, the

2    Second Circuit Court of Appeals affirmed a district court's preliminary injunction directing

3    New York's voter registration form be revised to include an option labeled "Other," followed

4    by a blank line. *Green Party of New York State v. New York State Board of Elections*, 389

5    F.3d 411 (2nd Cir. 2004).  In other words, when faced with a constitutional challenge to the

6    voter registration form, the New York courts determined an appropriate remedy was to direct

7    a form comparable to the one provided for by A.R.S. § 16-152.  However, *Green Party* is

8    distinguishable because it includes all political organizations that have qualified as a Party

9    on its registration form.  It is only those political organizations that do not qualify as a Party

10   for which the use of the "Other" is provided.  Plaintiffs in this case, however, are not an

11   unaffiliated option, but are political parties.

12        Nonetheless, the statute does not discriminate against any specific party.  In such

13   circumstances, "the State's important regulatory interests are generally sufficient" to

14   withstand a challenge.  *Caruso*, 422 F.3d at 859.  The Secretary argues that Arizona has a

15   strong interest in the stability of its political system," *Eu v. San Francisco County*

16   *Democratic Central Committee*, 489 U.S. 214, 226 (1989), and that the Constitution permits

17   a State's Legislature to decide that political stability is best served through a healthy

18   two-party system.  *Timmons*, 520 U.S. at 367.  Further, the Secretary points out that neither

19   the Supreme Court nor the Ninth Circuit have recognized a party's right to be listed on a

20   registration form or for no specific parties to be listed.

21        The State has an interest in enacting reasonable regulations of parties, elections, and

22   ballots.  Indeed the government must play an active role in structuring elections. *Caruso*, 422

23   F.3d at 855.  Additionally, the clerical simplification presumably assists in the State's efforts

24   to reasonably regulate election processes.  These interests must be balanced against the

25   character and magnitude of the burden resulting from the "Other" option.  *Caruso*, 422 F.3d

26   at 855.  The burden of writing a party name on a line is not great.  As pointed out by counsel

27   for the Secretary during oral argument, prior to the amended statute, all registrants had this

28   burden.  Additionally, the burden of writing a name on a line does not unnecessarily burden

parties that are not the two largest political parties that are entitled to continued representation on the ballot to organize. *See e.g. Iowa Socialist Party v. Nelson*, 909 F.2d 1175 (8th Cir. 1990) (Iowa's refusal to permit registrants to designate a minor party on the voter registration form did not unnecessarily burden the opportunity of the citizen or the party to organize or promote minority interests, Iowa had broad latitude in controlling frivolous party registration of tiny fractional interests, and Iowa's interest in preserving order in its democratic process weighed in favor of upholding registration procedures). Although Plaintiffs have submitted a declaration of Richard Winger which asserts that no state has adopted a registration system like that of Arizona, Plaintiffs' Response, Doc. 19, Attachment, *Nelson* demonstrates that a less-open registration form is permissible. Indeed, as pointed out by the Secretary in his reply, Connecticut and Florida currently use voter registration forms that list the Democratic and Republican parties along with a blank for indicating affiliation with some other party. *See* Reply, Doc. 21.

Further, Arizona's modified registration procedure does not present a situation where the parties that are not the two largest political parties that are entitled to continued representation on the ballot cannot identify a specific "other" party. *See e.g. Baer v. Meyer*, 728 F.2d 471 (10th Cir. 1984). Indeed, unlike in *Baer*, where voter registrants could designate their affiliation with one of the political parties (Democratic and Republican) or persons not interested in those two parties were required to register as "unaffiliated." 728 F.2d at 475, the blank line in Arizona's registration form allows for a specific designation. In other words, that parties in Arizona that are not the two largest political parties that are entitled to continued representation on the ballot are not placed in a situation where they can not determine from the mass of unaffiliated persons who were actually supporters of their organizations. *See Baer*, 728 F.2d at 475.

Although counsel for Plaintiffs argued during the hearing that the State could simply use four check boxes, this appears merely to be an attempt to replace the Legislature's judgment to list the top two consistent parties with Plaintiff's judgment to list the top four consistent parties. Indeed, it seems such a solution would result in other parties then arguing

the list should contain five, six, or even more options.  The State's interests in regulating the election processes outweigh the reasonable nondiscriminatory burden that results from the modified registration form.

Accordingly, IT IS ORDERED:

1.     Defendant's Motion for Summary Judgment (Doc. 15) is GRANTED.

2.     Plaintiffs' Motion for Summary Judgment (Doc. 17)  is DENIED.

3.     Summary Judgment is awarded in favor of Defendant and against Plaintiffs.

4.     The Clerk of Court shall enter judgment and shall then close its file in this matter.

DATED this 19th day of March, 2013.

Cindy K. Jorgenson
United States District Judge